**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | |
|---|---|
| **JEFFREY and KIMBERLY BUTTS, SHARRON BUTTS, SHANALE RENEE HILL, SANDRA JONES, and MONTGOMERY COUNTY SCHOOL DISTRICT** | **PLAINTIFFS** |
| **VERSUS** | **CAUSE NO.:3:17-cv-922CWR-FKB** |
| **REPRESENTATIVE PHILIP GUNN, in his official capacity as Speaker of the Mississippi House of Representatives, TATE REEVES, in his official capacity as President of the Mississippi Senate, ROSEMARY AULTMAN, in her official capacity as Chairman of the State Board of Education DR. CAREY M. WRIGHT, in her official capacity as Superintendent of the Mississippi Department of Education, JASON DEAN, BUDDY BAILEY, KAMI BUMGARNER, KAREN ELAM, JOHNNY FRANKLIN, WILLIAM HAROLD JONES, JOHN KELLY and FRANK MCCLELLAND, all in their official capacities as Members of the Mississippi State Board of Education and WINONA MUNICIPAL SEPARATE SCHOOL BOARD** | **DEFENDANTS** |

**MEMORANDUM BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

COME NOW Jeffrey and Kimberly Butts, Sharron Butts, Shanale Renee Hill, Sandra Jones, and the Montgomery County School District, by and through counsel, and files this their Memorandum Brief in Support of their Motion for a Temporary Restraining Order and Preliminary Injunction requesting that Defendants, and all persons acting on their behalf, be enjoined from consummating or taking any action to proceed with or carry out the consolidation of Winona Municipal Separate School District and Montgomery County School District as set forth in *Miss. Code Ann.* §37-3-104.4 ("the consolidation

statute), pending entry of a final judgment in this action, and in support thereof would show unto the Court the following facts and matters, to-wit:

## INTRODUCTION

A temporary restraining order and preliminary injunction are absolutely vital in this instance to eliminate the chaos that is currently ongoing and will continue without this Court's assistance. The consolidation statute fails to provide any authority whatsoever to Winona Separate Municipal School District, acting as the board for the consolidated school district, to take any action whatsoever at this juncture. The consolidated board, according to the consolidation statute, will not exist until July 1, 2018, the effective date of the consolidation. Although it is clearly without authority to do so, the consolidated board holds regular board meetings and is in the process of hiring a superintendent for the consolidated school district.

Not only does the statute as drafted clearly violate the constitutional rights of the residents of Montgomery County who reside outside of the city limits of Winona, the further implementation of which will lead to irreparable injury, it also fails to provide appropriate directives for its implementation leading to confusion amongst all residents of Montgomery County.

If this Court does not grant the requested injunctive relief, the Winona Separate Municipal School Board, acting alone and without any advice or input, with select a superintendent in the next few weeks. This narrow search is violative of the rights of all citizens of Montgomery County by severely limiting the pool of applicants. This and other actions must cease until the substantive issues raised in the Complaint are heard.

**FACTS**

The Mississippi Legislature enacted *Miss. Code Ann.* § 37-7-104.4 which effectuates the administrative consolidation of Montgomery County and Winona Municipal Separate School Districts designated as Winona-Montgomery Consolidated School District. The effective date of consolidation is slated to be July 1, 2018. Attached to the Motion as Exhibit 1 is a true and correct copy of the consolidation statute.

Beginning January 1, 2019, the board of trustees for the consolidated school district will be comprised of three (3) members of the existing Winona Municipal Separate School District with the most years remaining on their appointed terms. The two (2) remaining members of the board of trustees will be elected by electors of Montgomery County residing outside of the corporate limits.

This election is scheduled to take place on Tuesday after the first Monday in November of 2018, with the two (2) elected members of the board of trustees taking office on January 1, 2019. From July 1, 2018, the effective date of the consolidation until January 1, 2019, the board of trustees for the consolidated school district will consist of the existing members of the Board of Trustees of the Winona Municipal Separate School District. In other words, Winona Municipal Separate School District will govern the consolidated district from July 1, 2018, until January 1, 2019.

According to the statute at issue, the "new" board of trustees of the Winona-Montgomery Consolidated School District (the current Winona Municipal Separate School District board) will be "responsible for establishing the contracts for operations, teachers, principals, clerical and administrative staff personnel for the 2018-2019 school year". See ¶ 4(b). The residents of Montgomery County residing outside of the corporate limits of

Winona will have no representation on the board of trustees at the time personnel and staff are hired for the 2018-2019 school year.

According to the law, it will be the responsibility of the "new" board of trustees (the current Winona Municipal Separate School District board) to prepare and approve the budget of the new reorganized school district, including managing all assets, real and personal property of the Montgomery County School District.  See ¶ 4(d).  The residents of Montgomery County residing outside of the corporate limits will have no representation on the board of trustees at the time the budget for the 2018-2019 is prepared and approved.

According to the statute at issue, the "new" board of trustees of the Winona-Montgomery Consolidated School District (the current Winona Municipal Separate School District board) will be responsible for appointing the superintendent.  See ¶ 4(c).  The residents of Montgomery County residing outside of the corporate limits of Winona will have no representation on the board of trustees at the time the superintendent is hired for the 2018-2019 school year.

Although ¶ 3(a) of the statute provides that on or before September 1, 2017, the State Board of Education would provide notice and instructions regarding a timetable for action in connection with the consolidation, no notice or instructions have been provided to Montgomery County School District to date.

Without any statutory authority to do so, the Winona-Montgomery County Consolidated School Board began conducting official board meetings in September of 2017.  At one of these board meetings, qualifications for the superintendent of the consolidated school district were established, and advertising commenced for said

4

position. One of the qualifications for the superintendent of the consolidated school district is the requirement that the candidate must possess a doctorate degree. Another requirement for the superintendent of the consolidated school district is that the candidate must reside in Montgomery County. Attached to the Motion as Exhibit 2 is the advertisement published by the "NEW Winona Montgomery School District Board of Trustees".

It was announced at the October meeting that only three (3) applications were received. These requirements considered together severely limit the applicant pool and virtually guarantee that the current superintendent of Winona Municipal Separate School District will be awarded the position. If the board were truly considering the very best interests of all the children of Montgomery County, including those currently attending Montgomery County Schools, the board would cast a wide net in order to attract a broad range of qualified individuals with diverse backgrounds, experiences, and approaches to successfully educating all children of Montgomery County. In fact, the Montgomery County School District received nine (9) qualified applicants for its superintendent position in June of 2017, with all applicants knowing full well that the position would be for only one school year due to the impending consolidation. Plaintiffs' concerns regarding the motivating factors for the requirements of the superintendent, as well as future decisions which the Winona board will have to make, are validated by the questionable manner in which this superintendent search has been conducted.

The advertisement requires that all applications be received by November 1, 2017, and postmarked by November 3, 2017. The advertisement further provides that the selected candidate will begin working January 8, 2018. The consolidated board

conducted its most recent board meeting on Tuesday, November 14, 2017, during which it retired to executive session to consider the submissions for superintendent of the consolidated school district, among other things. After executive session, it was reported that no action was taken.

The logical conclusion is that the superintendent for the consolidated district will be selected in the very near future, since the selected candidate will begin working on January 18, 2018, according to the advertisement for the position. The superintendent search amounts to nothing more than a sham, leaving the children currently attending Montgomery County School District under the leadership of the entire Board of Trustees of the Winona Municipal Separate School District and likely its current superintendent, if the consolidation statute is allowed to be implemented as drafted.

Notably, the original version of this statute provided that all members of the consolidated board would be elected utilizing existing board of supervisor election districts. See section 3 of Senate Bill 2495 which is attached to the motion as Exhibit 3. Additionally, the Montgomery County Board of Supervisors has gone on record voicing its disagreement with the statute as drafted and even meeting with local legislators.[1] The statute as drafted does not represent the desires of the majority of citizens of Montgomery County. It appears that a rogue few wielding political power and pressure were able to convince local legislators to amend the statute and place Winona Separate Municipal School District in the driver's seat.

---

[1] Several articles were published during the summer of 2017 regarding the Montgomery County Board of Supervisors and its position in connection with the consolidation. Copies of the article have been requested from the Winona Times.

6

This Court must enjoin all defendants from consummating or taking any further action to implement this consolidation statute.

## ARGUMENTS AND AUTHORITIES

This claim for injunctive relief is governed pursuant to Rule 65 of the Federal Rules of Civil Procedure. A preliminary injunction serves to "preserve the status quo and thus prevent irreparable harm until the respective rights of the parties can be ascertained during a trial on the merits," and the decision to grant or deny a preliminary injunction lies within the discretion of the trial court. *City of Dallas v. Delta Air Lines, Inc.*, 847 F. 3d 279, 285 (5th Cir. 2017). Temporary restraining orders are "simply highly accelerated and temporary form(s) of preliminary injunctive relief," which serve to preserve the status quo and prevent irreparable harm so long as is necessary to hold a hearing. *RW Development, LLC v. Cuningham Grp. Architecture, Inc.*, 2012 WL 3258782 at *2 (S.D. Miss. Aug. 8, 2012).

The party moving for either form of relief under Rule 65 must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest. *Sepulvado v. Jindal*, 729 F. 3d 413, 417 (5th Cir. 2013) quoting *Byrum v. Landreth*, 566 F. 3d 442, 445 (5th Cir. 2009).

The existence of irreparable injury is "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction". *Trinity USA Operating, LLC v. Barker*, 844 S. Supp. 2d 781, 786 (S.D. Miss. 2011). Generally, an injury or harm is irreparable where there is no adequate remedy at law, such as monetary damages.

7

*Janvey v. Alguire*, 647 F. 3d 585, 600 (5th Cir. 2011). Unless restrained and enjoined by this Court, the Winona Municipal Separate School District board, acting as the board for the consolidated district, will select a superintendent, all employees and implement a budget for the Winona Montgomery Consolidated District without any representation from Montgomery County residents who reside outside of the city limits of Winona. The statute does not give Montgomery County residents outside of the municipal limits of Winona representation on this board until January 1, 2019.

As it stands today, all residents in what is currently the Montgomery County School District have the ability to vote to elect representation on the school board. That ability has already ceased. Although the statute implies that it is a 6-month period in which there will be no representation for the residents of Montgomery County outside the city limits of Winona. That time frame is actually in excess of a year, as the Winona board began taking official action on behalf of the consolidated district back in September of 2017. "Unofficial" actions likely began well before that. It is imperative that this injunctive be granted as this stage in order to prevent any further detrimental actions to the Plaintiffs and other residents of Montgomery County who live outside of the municipal limits of Winona.

If the consolidation proceeds but is found after trial to be unlawful, Plaintiffs would have no adequate remedy at law, and this Court's ability to fashion effective relief would be virtually nonexistent. Pursuant to the consolidation statute, as of July 1, 2018, the Montgomery County School District would be abolished and all of its property conveyed to the consolidated district. In the short term, the consolidated board would have offered the selected superintendent a contract, hired all employees for the upcoming school year

and implemented the budget for the upcoming school year. Once this consolidation process is underway, this Court's power to undo is severely impairment. Even this Court cannot unring the bell. The individual plaintiffs have a continuous, direct and immediate interest in having this injunctive relief addressed as soon as possible, as well as the outcome of this litigation.

There is substantial likelihood that that plaintiffs will establish at trial that *Miss. Code Ann.* § 37-7-104.4 is unconstitutional. In order to show a likelihood of success, plaintiffs are required to present a "prima facie case". *Ruiz v. Estelle*, 650 F. 2d. 555, 565 (5th Cir. 1981).

A. MISS CODE ANN 37-7-104.4 VIOLATES EQUAL PROTECTION

The Equal Protection Clause provides that "[n]o State shall……deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. Facially, this statute discriminates against the residents of Montgomery County who reside outside of the municipal limits of Winona by disenfranchising them from the present until January 1, 2019. Even when those residents of Montgomery County are allowed representation on the consolidated school board in January of 2019, the consolidation statute continues to run afoul of the Equal Protection Clause because they are denied equal representation based on population.

The Equal Protection Clause does not forbid classifications because most laws differentiate in some fashion between classes of persons. *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). "It simply keeps persons who are governmental decision makers from treating differently persons who are in all relevant respects alike." *Id.*

"Since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized." *Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, (1969) citing *Reynolds v. Sims*, 377 U.S 533, 562 (1964). The United States Supreme Court went on to state that any unjustified discrimination in determining who may participate in political affairs or in the election of public officials undermines the legitimacy of representative government. *Id.* at 626. Strict scrutiny is applicable to statutes denying the right to vote to those citizens who are otherwise qualified by residence and age. *Id.*

The Supreme Court has held that a school board is an administrative, not a legislative body, and therefore its members need not be elected. *Sailors v. Kent Bd. Of Education*, 387 U.S. 105, 108 (1967). However, "once franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment." *Harper v. Virginia Bd. Of Elections*, 383 U.S. 663, 665 (1966).

Notably, the Kramer case was an Equal Protection challenge in which the United States Supreme Court struck down a statute that provided that in certain New York districts residents may vote in the school district election only if they own or lease taxable property within that school district or have children enrolled in local schools. *Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 624-625. Since Mr. Kramer had neither, he was denied the right to vote in school board elections. *Id.* The Court determined that the requirements of the New York statute were not sufficiently tailored to justify the denial of the right to vote to Mr. Kramer and members of his class. *Id.* at 633.

Plaintiffs in this instance can easily make a prima facie case that the consolidation statute at issue is also not narrowly tailored to justify the denial of the right to vote to the residents of Montgomery County who reside outside of the municipal limits of Winona. These residents currently have an elected board in place at the Montgomery County School District, and without any justification, the right to vote and be a voice in the education of students in Montgomery County has been stripped from them.

According to the United States Census Bureau, the population of Montgomery County as of 2010, was 10,925. As of the 2010 census, Winona had a population of 5,043, which is forty-three percent (43%) of the county population. The remaining 5,882 people or fifty-seven percent (57%) of the residents of Montgomery County live outside the corporate limits of Winona. Although a minority of the residents of Montgomery County reside in the City of Winona, three (3) of the five (5) school board positions for the consolidated school district will be appointed from residents of the City of Winona. This disparity in population distribution between the three (3) appointed positions from the City of Winona and only two (2) elected positions from those Montgomery County residents who are a sizeable majority of the county population is also violative of the Equal Protection Clause of the Fourteenth Amendment. The Supreme Court has held that local units with general governmental power over an entire geographic area may NOT, consistent with the Equal Protection Clause of the Fourteenth Amendment, be apportioned into single member districts of substantially unequal population. *Avery v. Midland County*, 390 U.S. 474, 486 (1968) citing Reynolds, 377 U.S. 533 (1964). In other words, the residents of Montgomery County residing outside of Winona cannot be denied equal representation.

If my math is correct and Winona's population makes up forty-three percent (43%) of the population of Montgomery County, each of the appointed members of the board would represent 14.33% of the population of Winona. By my calculations, the remaining residents of the county comprise fifty-seven percent (57%) of the population of the county. Each of the elected board members would represent double that of appointed representatives at 28.5%. This scheme is clearly violative of the one person one vote rule.

| | |
|---|---|
| Appointed Seat 1 | 14.33% |
| Appointed Seat 2 | 14.33% |
| Appointed Seat 3 | 14.33% |
| Elected Seat 1 | 28.5% |
| Elected Seat 2 | 28.5% |

Accordingly, Plaintiffs are able to make a prima facie case of equal protection violations and therefore satisfy the likelihood of success on the merits prong of the preliminary injunction analysis.

B. MISS CODE ANN 37-7-104.4 VIOLATES THE VOTING RIGHTS ACT

Section 2 of the Voting Rights Act, codified at 42 U.S.C. § 1973, prohibits drawing election districts in ways that improperly dilute minorities' voting power. This prohibition applies to states, counties, cities, school districts, and any other governmental unit that holds elections.

According to the United States Census Bureau, the population of Montgomery County as of 2010, was 10,925. As of the 2010 census, Winona had a population of 5,043, which is forty-three percent (43%) of the county population. The remaining 5,882

people or fifty-seven percent (57%) of the residents of Montgomery County live outside the corporate limits of Winona.

The consolidation statute directs the Montgomery County Board of Supervisors to apportion the area outside of the Winona corporate limits into two (2) single member districts for the election of the two county elected positions. The other three positions would be appointed by the City of Winona's Board of Aldermen. The composition of the consolidated school board is inconsistent with the population of the City of Winona versus the population of Montgomery County as a whole.

The obvious impact is that the children currently attending the Montgomery County School District are left without any direct representation. The effect is that the children in the Montgomery County School District, which is comprised of ninety percent (90%) African American and other minorities who are unquestionably the most at risk, are left without adequate representation. There is an obvious and unquestionable discriminatory effect in the context of the totality of the circumstances in the local electoral process in violation of the Amended Section 2 of the Voting Rights Act.

C. CONSOLIDATION ORDER

Finally, the consolidation statute fails to address the Montgomery County School District Desegregation Order in any meaningful way, including its mandates which remain in effect regarding the racial composition of certain administrators and ratios of blacks versus whites in district schools. The consolidation statute states as follows: "[a]ll administrative consolidations under this section shall be accomplished so as not to delay or in any manner negatively affect the desegregation of another school district in the county". What in the world does that mean? Is the consolidated district still bound by the

order?  Is any duty to abide by the Desegregation Order extinguished when the Montgomery County School District is abolished?  If there is a duty to abide by the Order, is that only for schools that were formerly a part of Montgomery County School District?  The consolidation statute fails to answer any of these questions and leaves them open to interpretation by the Winona Separate Municipal School Board.

## **CONCLUSION**

A temporary restraining order and preliminary injunction are necessary in order to protect all residents of Montgomery County and prevent the irreparable injury that will inevitably occur due to the disenfranchisement of its citizens, as well as other constitutional violations.  Any harm to the defendants from enjoining the consolidation would be outweighed by the disenfranchisement of certain residents of Montgomery County.  In fact, a delay of the implementation of the consolidation would cause no ascertainable harm to defendants.

Granting the requested relief will serve the public interest.  It will allow this matter to be fully litigated and ensure that none of the residents of Montgomery County experience any infringement upon their fundamental and Constitutionally-guaranteed rights.  This Court has authority under Rule 65 of the Federal Rules of Civil Procedure to fashion the requested relief.

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs pray that defendants and all persons acting on their behalf be enjoined from consummating or taking any action to proceed with or carry out the consolidation set forth in *Miss. Code Ann.* §37-3-104.4, pending entry of a final judgment in this action.

Respectfully submitted, this the 8th day of December, 2017.

BY:   /s/ Chynee A. Bailey
   CHYNEE A. BAILEY, MSB 99513

Attorney for Plaintiffs

OF COUNSEL:

Bailey Law, PLLC
522 2nd Avenue North, Ofc A
Post Office Box 8121
Columbus, MS 39705
T: 601.857.8100
F: 601.857.8010

CERTIFICATE OF SERVICE

I, Chynee A. Bailey, do hereby certify that I have this date filed the above and foregoing document using the Court's ECF filing system and thereby served on all counsel of record who have entered their appearance in this action to date.

THIS, the 8th day of December, 2017.

   /s/ Chynee A. Bailey